UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| JAMA L. HARRIS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | No. 4:10-CV-2198 (CEJ) |
| ) | |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM AND ORDER**

This matter is before the Court for review of an adverse ruling by the Social Security Administration.

### I. Procedural History

On February 8, 2007, plaintiff filed an application for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401 et seq., §§ 1381 et seq., and an application for supplemental security income disability benefits under Title XVI of the Act, 42 U.S.C. §§ 1391 et seq., claiming that she has been disabled and unable to work since January 31, 2005. (Tr. 89-103). An earlier application for disability benefits alleging the same onset date was denied on May 1, 2006. Id. Following the initial denial of plaintiff's February 8, 2007 applications, plaintiff requested a hearing before an Administrative Law Judge (ALJ). (Tr. 48-57; 60).

Following a hearing, the ALJ issued a written decision denying plaintiff's claims on August 4, 2009. (Tr. 10-19). The Appeals Council denied plaintiff's request for review on September 29, 2010. (Tr. 1-5). Accordingly, the ALJ's decision stands as the Commissioner's final decision. See 42 U.S.C. § 405(g).

## II. Evidence Before the ALJ

### A. Testimony and Application Documents

At the time of the hearing on June 11, 2009, plaintiff was 47 years-old and lived in a house with her husband and three children, aged 19, 17 and 11. Plaintiff completed two years of college and vocational training as a hair stylist and as a certified medical technician. Plaintiff's last job was as a hairdresser.

Plaintiff testified that her "biggest" health condition was the loss of dexterity in her hands. (Tr. 26-27). She testified that she had pain and swelling in her hands, wrists, elbows, ankles and feet which she attributed to arthritis. She testified that the pain and swelling was affected by her level of activity. Plaintiff also testified that she suffered from fibromyalgia which caused her to have pain in her neck, shoulders and knees. Plaintiff stated that Percocet and Lyrica helped relieve her pain. Plaintiff also suffered from diabetes and diabetic neuropathy. Plaintiff was 5'5'' tall, and at the time of the hearing she weighed 330 pounds. She testified that she had begun following a diabetic diet and had lost 20 pounds in the preceding six months. Finally, plaintiff testified that she suffered from depression, but this condition was improved by medication.

Plaintiff's husband was disabled due to a back injury he sustained in 1994 and subsequent disc surgery. On the days that plaintiff is unable to get out of bed, her husband takes care of himself. Plaintiff and her children share the household chores. Plaintiff did four or five loads of laundry per week and some cooking. She testified that pain prevented her from doing certain tasks, such as sweeping and vacuuming. She testified that she experienced pain after sitting for 20 or 30 minutes or after standing for 15 or 20 minutes. Plaintiff believed that she could walk for only 10 or 15 minutes

before having to rest.  She could lift two pounds with her dominant right hand, and she could lift almost twice as much using both hands.  (Tr. 20-44).

In a Disability Report, plaintiff stated that her ability to work was limited by diabetes, carpal tunnel syndrome, arthritis, psoriasis, fibromyalgia, depression, and anxiety.  (Tr. 119).  She also stated that she last worked on January 31, 2005, and that she quit because she "couldn't handle the stress."  (Id.)  Plaintiff's employment history includes work as a hair stylist during the period from 1975 to 1999 and as a caregiver at a facility for the mentally disabled between 2002 and 2005.  (Tr. 24-25).

In a Function Report, plaintiff wrote that her daily activities included preparing small meals, watching television, reading, and using the computer. She was able to take care of her personal grooming.  She also was able to drive to her doctor's office, "sit and visit" with others, and attend church every Sunday.  Plaintiff stated that she was unable to use her hands "most days" except to perform small tasks, and that she had pain in her back and knees that affected her ability to stand, walk, kneel and climb stairs.  Plaintiff further stated that she sometimes needed to be reminded to take her medications and to eat. (Tr. 126-133).

On February 8, 2007, plaintiff was interviewed by H. Adams, a disability claims administrator. (Tr. 114-17).  Adams reported that plaintiff appeared to weigh over 300 pounds and that she had psoriasis on her hands and labored breathing.  According to the report, Adams observed no difficulty with plaintiff's standing, sitting, walking, or use of her hands.  On April 2, 2007, a residual functional capacity (RFC) assessment was completed by Sharon Falter, a disability claims counselor.  (Tr. 228-233).  Based on a review of plaintiff's medical records, Falter opined that plaintiff could engage in

a full range of light-duty work,[1] but could only occasionally engage in gross or fine manipulation to avoid exacerbating the acute arthritis symptoms in her hands and wrists.

### B.     The Medical Record

The relevant medical record begins with an evaluation by Hugh Schuetz, D.O. on May 24, 2006.  (Tr. 192).  Plaintiff complained of right-wrist pain.  Dr. Shuetz's records indicate that plaintiff had a history of right-wrist pain and opined that three x-rays of plaintiff's right wrist indicated no fractures or other abnormality.  Plaintiff was again seen by Dr. Schuetz on June 15, 2006 for an MRI of her right wrist and follow-up evaluation.  (Tr. 193).  Dr. Schuetz noted that plaintiff had a ganglion cyst on her wrist, but that it was less prominent than it was on the prior visit.

On January 22, 2007, plaintiff established primary care with David Buvat, M.D. (Tr. 221).  Dr. Buvat noted that plaintiff was morbidly obese at 348 pounds with a height of 5'5", was experiencing synovitis[2] of the knuckles, tender wrists, prior carpal tunnel release on the left wrist, trace edema on both legs, and psoriatic changes in her nails.  Dr. Buvat's diagnoses were "1. Symmetric seronegative arthritis,[3] most likely consistent with psoriatic arthritis[4] vs. atypical presentation of gouty arthritis.  2. Type

---

[1] Light-duty work requires lifting no more than 20 pounds occasionally and no more than 10 lbs frequently.

[2] Synovitis is an inflammation of a synovial membrane, especially that of a joint. Stedman's Med. Dict. 1773 (27th ed. 2000).

[3] "Seronegative" refers to those spondyloarthropathies in which the rheumatoid factor is negative.  These include ankylosing spondylitis, reactive arthritis, and psoriatic arthritis.  The Merck Manual of Diagnosis and Therapy 290-91 (18th ed. 2006).

[4] Psoriatic arthritis is a type of arthritis (joint inflammation) that often occurs with psoriasis of the skin. A.D.A.M. Medical Encyclopedia, available at http://www.ncbi.nlm.nih.gov/pubmedhealth/PMH0001450/

2 diabetes mellitus, uncontrolled.  3. Dyslipidemia,[5] uncontrolled. 4.  Hypertension." Id.

Plaintiff was seen by Dr. Buvat again on February 22, 2007.  (Tr. 220).  Dr. Buvat noted that plaintiff's psoriasis was improving, the synovitis of her knuckles was better and her wrists were no longer tender.

On June 1, 2007, plaintiff was again seen by Dr. Buvat.  (Tr. 245).  Dr. Buvat noted that plaintiff underwent nerve conduction studies, which showed no evidence of carpal tunnel syndrome, but that plaintiff continued to have pain in her wrist associated with occupation and overuse.  Dr. Buvat also observed that plaintiff's right wrist showed no evidence of synovitis or significant inflammation.

Dr. Buvat examined plaintiff on fifteen separate visits between October 2007 and March of 2009.  (Tr. 248-88).  His reports generally indicate that plaintiff's pain was under fair control, that her arthritis and diabetic symptoms were well-controlled, with occasional swelling and flare-ups of her arthritis that often coincided with plaintiff's failure to take her medications.  Plaintiff's regular prescriptions during this time period included Percocet,[6] Lyrica, Enbrel, Zoloft,[7] and Xanax.[8]  On February 13, 2009, Dr.

---

[5]Dyslipidemia is high cholesterol.

[6] Percocet is a combination of Ocycodone and Acetaminophen.  Ocycodone is an opioid analgesic indicated for relief of moderate to moderately severe pain.  It can produce drug dependence.  See Phys. Desk. Ref. 1114 (60th ed. 2006).

[7]Zoloft, or Sertraline, is a member of the SSRA class and is used to treat depression, obsessive-compulsive disorder, panic attacks, post-traumatic stress disorder, and social anxiety disorder.  It is also used to relieve the symptoms of premenstrual dysphoric disorder. www.nlm.nih.gov/medlineplus/druginfo/meds (last visited on Oct. 27, 2009).

[8]Xanax is indicated for the treatment of panic disorder.  See Phys. Desk Ref. 2655-56 (60th ed. 2006).

Buvat diagnosed plaintiff with diabetic neuropathy.[9]  (Tr. 277).  Dr. Buvat reaffirmed a prior diagnosis[10] of depression on February 26, 2009, but he did not alter plaintiff's Zoloft and Xanax prescriptions. (Tr. 283).  Plaintiff was not referred for further psychological treatment, nor does the medical record indicate that she has seen a mental health specialist.  Between January 2007 and March 2009, Dr. Buvat did not describe any physical or mental limitations as a result of plaintiff's impairments.  He did encourage her to adhere to a diabetic diet and engage in daily exercise.  (Tr. 272).

The last record from Dr. Buvat is dated April 3, 2009.  (Tr. 294).  Dr. Buvat notes on this visit that plaintiff's fibromyalgia[11] had "flared up real bad." Based on plaintiff's report that she drops things frequently, Dr. Buvat wrote that plaintiff is not able to carry more than five pounds.  It was also noted that plaintiff's feet were swollen, and that plaintiff had undergone carpal tunnel surgery on the left hand but not the right.  Id.  Dr. Buvat noted that plaintiff had multiple tender points identified,

---

[9]Diabetic neuropathy is damage to nerves in the body that occurs due to high blood sugar levels from diabetes.   http://www.ncbi.nlm.nih.gov/pubmedhealth/PMH0001713/ (last visited January 19, 2012).

[10]The medical records associated with this diagnosis have not been provided. Dr. Buvat's records indicate that plaintiff was prescribed Zoloft by Dr. Shuetz, but in a post-hearing letter to the ALJ dated June 25, 2009, plaintiff states that this diagnosis was originally made by a nurse practitioner on July 17, 2006.  (Tr. 151).

[11]Fibromyalgia is a common syndrome in which a person has long-term, body-wide pain and tenderness in the joints, muscles, tendons, and other soft tissues. The cause is unknown.  Pain is the main symptom of fibromyalgia. It may be mild to severe.  To be diagnosed with fibromyalgia, a person must have had at least 3 months of widespread pain, and pain and tenderness in at least 11 of 18 areas.  Blood and urine tests are usually normal.  However, tests may be done to rule out other conditions that may have similar symptoms. Fibromyalgia is a long-term disorder. The goal of treatment is to help relieve pain and other symptoms, and to help the person cope with the symptoms.  A.D.A.M Medical Encyclopedia, Fibromyalgia, available at http://www.ncbi.nlm.nih.gov/pubmedhealth/PMH0001463/ (last visited January 17, 2012).

edema in both ankles, but no swelling in her fingers or synovitis.  His diagnoses were fibromyalgia, diabetic neuropathy, and psoriatic arthritis.  Finally, Dr. Buvat described plaintiff as "very disabled at this time."  Id.  There were no changes made to her medications.  Dr. Buvat wrote, "For now, Patient was given reassurance and we will observe her symptoms and she is to call me or to return to clinic prn if these symptoms worsen or fail to improve."  Id.

### III.  The ALJ's Decision

In the decision issued on August 4, 2009, the ALJ made the following findings:

1. Plaintiff met the insured status requirements of the Social Security Act on May 2, 2006, but she was no longer insured after December 31, 2006.

2. Plaintiff has not engaged in substantial gainful activity since May 2, 2006.

3. Plaintiff has the following severe impairments: psoriatic arthritis and diabetic neuropathy.

4. Plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.

5. Since May 2, 2006, plaintiff has had the residual functional capacity (RFC) to lift or carry twenty pounds occasionally and ten founds frequently, sit six hours in an eight-hour day, and stand and/or walk a total of six hours in an eight-hour day.  Plaintiff has not had any postural, manipulative or environmental limitations.  This constitutes a full range of light work.

6. Plaintiff has been able to perform her past relevant work as a companion or hairdresser since May 2, 2006. (20 C.F.R. 404.1565 and 416.965).

7. Plaintiff has not been disabled in accordance with the Social Security Act.

(Tr. 13-19).  The ALJ further declined to reopen plaintiff's prior application, finding plaintiff to be not disabled from January 31, 2005 to May 1, 2006 on *res judicata* grounds.  (Tr. 15).

### IV.  Discussion

To be eligible for disability insurance benefits, plaintiff must prove that she is disabled. Pearsall v. Massanari, 274 F.3d 1211, 1217 (8th Cir. 2001). The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment which can be expected to result in death or which can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382 (a)(3)(A) (2000). An individual will be declared disabled "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

To determine whether a claimant is disabled, the Commissioner employs a five-step evaluation process, "under which the ALJ must make specific findings." Nimick v. Secretary of Health and Human Serv. 887 F.2d 864 (8th Cir. 1989). The ALJ first determines whether the claimant is engaged in substantial gainful activity. If the claimant is so engaged, she is not disabled. Second, the ALJ determines whether the claimant has a "severe impairment," meaning one which significantly limits her ability to do basic work activities. If the claimant's impairment is not severe, she is not disabled. Third, the ALJ determines whether the claimant's impairment meets or is equal to one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. If the claimant's impairment is, or equals, one of the listed impairments, she is disabled under the Act. Fourth, the ALJ determines whether the claimant can perform her past relevant work. If the claimant can, she is not disabled. Fifth, if the claimant cannot perform her past relevant work, the ALJ determines whether she is capable of

performing any other work in the national economy. If the claimant is not, she is disabled. See 20 C.F.R. §§ 404.1520, 416.920 (2002); Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987).

### A. Standard of Review

The Court must affirm the Commissioner's decision, "if the decision is not based on legal error and if there is substantial evidence in the record as a whole to support the conclusion that the claimant was not disabled." Long v. Chater, 108 F.3d 185, 187 (8th Cir. 1997). "Substantial evidence is less than a preponderance, but enough so that a reasonable mind might find it adequate to support the conclusion." Estes v. Barnhart, 275 F.3d 722, 724 (8th Cir. 2002) (quoting Johnson v. Apfel, 240 F.3d 1145, 1147 (8th Cir. 2001)). The court may not reverse merely because the evidence could support a contrary outcome. Estes, 275 F.3d at 724.

In determining whether the Commissioner's decision is supported by substantial evidence, the district court reviews the entire administrative record, considering:

1. The ALJ's credibility findings;
2. the plaintiff's vocational factors;
3. the medical evidence;
4. the plaintiff's subjective complaints relating to both exertional and nonexertional impairments;
5. third-party corroboration of the plaintiff's impairments; and
6. when required, vocational expert testimony based on proper hypothetical questions, setting forth the claimant's impairment.

See Stewart v. Secretary of Health & Human Servs., 957 F.2d 581, 585-86 (8th Cir. 1992).

The court must consider any evidence that detracts from the Commissioner's decision. Warburton v. Apfel, 188 F.3d 1047, 1050 (8th Cir. 1999). Where the Commissioner's findings represent one of two inconsistent conclusions that may reasonably be drawn from the evidence, however, those findings are supported by substantial evidence. Pearsall, 274 F.3d at 1217 (citing Young v. Apfel, 221 F.3d 1065, 1068 (8th Cir. 2000)).

B.  **Analysis**

Plaintiff alleges that the ALJ erred by: (1) failing to consider plaintiff's obesity; (2) determining plaintiff's impairments of fibromyalgia, carpal tunnel and depression were not severe; (3) assessing plaintiff's RFC; and (4) finding that plaintiff could return to her past relevant work.

1.  Consideration of Plaintiff's Obesity

The Court finds that the ALJ was not required to address plaintiff's obesity because at no point did plaintiff claim that she was disabled or impaired as a result of her obesity. While an ALJ is "obligated to fully and fairly develop the record," he or she is "not required however, to investigate a claim not presented at the time of the application for disability benefits and not raised at the hearing." Rodgers v. Astrue, No. 09-1214, 2010 WL 3385086 (D. Minn. 2010 ) (citing Gregg v. Barnhart, 354 F.3d 710, 713 (8th Cir.2003); Peña v. Chater, 76 F.3d 906, 909 (8th Cir.1996)). At plaintiff's first visit with Dr. Buvat on January 22, 2007, it was noted that plaintiff was morbidly obese. However, neither in that or in any of the subsequent visits did Dr. Buvat place any physical limitations on plaintiff's ability to perform work related functions because of her obesity. In her testimony and application documents, plaintiff described herself as disabled due to pain and swelling associated with arthritis, carpal tunnel syndrome

and fibromyalgia, and due to depression.  "Given that neither the medical records nor testimony demonstrates that her obesity results in additional work-related limitations, it was not reversible error for the ALJ's opinion to omit specific discussion of obesity." McNamara v. Astrue, 590 F.3d 607, 611 (8th Cir. 2010) (citing Forte v. Barnhart, 377 F.3d 892, 896 (8th Cir. 2004).

### 2. Failure to Consider Impairments as Severe

Step two of the five-step evaluation provides that a claimant is not disabled if her impairments are not "severe," and have lasted or are expected to last for at least 12 months.  20 C.F.R. § 416.920(a)(4)(ii); § 416.909 (duration requirement).  An impairment is not severe if it amounts only to a slight abnormality that would not significantly limit the claimant's physical or mental ability to do basic work activities. Kirby v. Astrue, 500 F.3d 705, 707 (8th Cir. 2007) (citing Bowen v. Yuckert, 482 U.S. 137, 153 (1987)). It is the claimant's burden to establish that his impairment or combination of impairments are severe. Id. "Severity is not an onerous requirement for the claimant to meet, but it is also not a toothless standard. Id. at 708 (citations omitted).

Here, the ALJ's determination that plaintiff's carpal tunnel and depression were not severe impairments is supported by substantial evidence in record.   The ALJ rejected plaintiff's claim of severe impairment due to carpal tunnel syndrome by specifically referencing an entry by Dr. Buvat on June 1, 2007, which noted that plaintiff underwent nerve conduction studies and that they showed no evidence of carpal tunnel syndrome.   Dr. Buvat opined that plaintiff's wrist pain was associated with occupation and overuse---not to carpal tunnel syndrome.  The ALJ correctly relied on this medical evidence in finding plaintiff's carpal tunnel syndrome to be not severe

because there were no subsequent diagnoses or limitations in the medical record based on carpal tunnel.  The subsequent references in the medical record merely note the fact that plaintiff had a carpal tunnel release procedure performed on her left wrist, but not her right.  Thus, while there is some medical evidence that plaintiff had a history of carpal tunnel, the ALJ relied on substantial evidence in the form a definitive and subsequent diagnosis in finding plaintiff's carpal tunnel to not be a severe, medically-determinable impairment.

Next, the ALJ correctly applied the analysis set forth in 20 C.F.R. 404.1520a and 416.920a to find plaintiff's depression not severe. "In determining whether a claimant's mental impairments are 'severe,' the regulations require the ALJ to consider 'four broad functional areas in which [the ALJ] will rate the degree of [the claimant's] functional limitation: Activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation.'" Partee v. Astrue, 638 F.3d 860 (8th Cir. 2011) (citing 20 C.F.R. §§ 404.1520a(c)(3), 416.920a(c)(3)).  "The regulations further provide: If we rate the degree of your limitation in the first three functional areas as "none" or "mild" and "none" in the fourth area, we will generally conclude that your impairment(s) is not severe, unless the evidence otherwise indicates that there is more than a minimal limitation in your ability to do basic work activities." Id. (citing §§ 404.1520a(d)(1), 416.920a(d)(1)); see also Trenary v. Bowen, 898 F.2d 1361, 1364 (8th Cir.1990) ("Depression … is not necessarily disabling.").

The ALJ found that plaintiff had not experienced any episodes of decompensation, and that she was only mildly limited in her daily activities, social functioning, and in maintaining concentration, persistence and pace.  These findings

-12-

are supported by substantial evidence in the record: plaintiff did not testify to any episodes of decompensation or limitations from her depression; plaintiff has not seen or been referred to a psychiatrist or psychologist; her only treatment includes prescriptions for Zoloft and Xanax, which had not been increased; and plaintiff testified that she felt a much better when taking the medication. See Hensley v. Barnhart , 352 F.3d 353, 357 (8th Cir. 2003) (finding that a prescription for "antidepressants on at least one occasion is not enough to require the ALJ to inquire further into the condition."); Davidson v. Astrue, 578 F.3d 838 (8th Cir. 2009) ("Impairments that are controllable or amenable to treatment do not support a finding of disability.")

As to the ALJ's determination that plaintiff's fibromyalgia was not a severe impairment, however, the Court finds that this determination is not supported by substantial evidence. On April 3, 3009, Dr. Buvat diagnosed plaintiff with fibromyalgia. The ALJ determined that this singular diagnosis of fibromyalgia was insufficient to show a medically determinable impairment because Dr. Buvat's notes did not indicate the requisite number of tender points required for a definitive fibromyalgia diagnosis. Although the ALJ is correct that Dr. Buvat's records do not specify the number of tender points detected or the diagnostic techniques used in determining that plaintiff had fibromyalgia, Dr. Buvat did indicate that plaintiff had "multiple tender points," that her "fibromyalgia has flared up really bad," and that plaintiff was "very disabled at this time." (Tr. 294). In light of these statements by plaintiff's treating physician and the chronic nature of fibromyalgia, the ALJ erred by failing to accept Dr. Buvat's diagnosis as evidence of a severe impairment. See Ritchey v. Barnhart, 2005 WL 6117485 at *12 (E.D. Mo.2005) ("Fibromyalgia is a chronic condition, usually diagnosed after eliminating other conditions, for which no confirming diagnostic tests exist." (citing

Forehand v. Barnhart, 364 F.3d 984, 987-988 (8th Cir.2004)); Cline v. Sullivan, 939 F.2d 560, 567 (8th Cir.1991) (recognizing that fibromyalgia is a potentially disabling condition).

The Court finds this error, however, does not warrant remand. In diagnosing plaintiff's fibromyalgia, Dr. Buvat did not indicate any symptoms that were not previously attributed to plaintiff's arthritis and diabetic neuropathy. Nor did he change plaintiff's medication or treatment regimen. As in many disability cases, the cause of plaintiff's alleged disability is not necessarily the underlying conditions themselves, but rather the symptoms associated with the conditions. 20 C.F.R. § 416.929. Because the ALJ determined that plaintiff was suffering from psoriatic arthritis and diabetic neuropathy, her failure to consider plaintiff's fibromyalgia as a severe impairment is not significant because there was minimal difference in the functional symptoms[12] between the conditions the ALJ found severe and those found non-severe. See Greene v. Astrue, No. 4:10CV831, 2011 WL 2472556 (E.D. Mo. 2011) (noting that a failure to consider fibromyalgia as a severe impairment is not significant where there was minimal difference between the functional symptoms associated with fibromyalgia and those conditions the ALJ considered severe).

3. RFC Determination

A claimant's RFC is what he or she can do despite his limitations. 20 C.F.R. § 404.1545(a)(1). In determining a claimant's RFC, the ALJ must consider all relevant

---

[12]See symptoms and treatment of psoriatic arthritis, diabetic neuropathy, and fibromyalgia, available at http://www.ncbi.nlm.nih.gov/pubmedhealth/s/diseases_and_conditions (last visited January 17, 2012). Notably, psoriatic arthritis and fibromyalgia are both associated with chronic pain and tenderness of the joints; Lyrica is also commonly prescribed to treat the neurological symptoms of diabetic neuropathy and fibromyalgia.

-14-

evidence, including medical records, observations of treating physicians and others, and claimant's own descriptions of his or her limitations. Id.  The ALJ "bears the primary responsibility for assessing a claimant's [RFC] based on all relevant evidence." Roberts v. Apfel, 222 F.3d 466, 469 (8th Cir. 2000).   Nonetheless, the RFC determination must be supported by "medical evidence that addresses claimant's 'ability to function in the workplace.' " Baldwin v. Barnhart, 349 F.3d 549, 556 (8th Cir.2003) (quoting Nevland v. Apfel, 223 F.3d 853, 858 (8th Cir. 2000)).

In assessing the credibility of a claimant, the ALJ is required to examine and to apply the five factors from Polaski v. Heckler, 739 F.2d 1320 (8th Cir.1984).  See Shultz v. Astrue, 479 F.3d 979, 983 (2007); 20 C.F.R. § 404.1529 and 20 C.F.R. § 416.929.  The factors to consider are as follows: (1) the claimant's daily activities; (2) the duration, frequency, and intensity of the pain; (3) the precipitating and aggravating factors; (4) the dosage, effectiveness, and side effects of medication; and (5) the functional restrictions. Id.  While these considerations must be taken into account, the ALJ's decision need not include a discussion of how every Polaski factor relates to the claimant's credibility.  Tucker v. Barnhart, 363 F.3d 781, 783 (8th Cir.2004).  The ALJ may discount subjective complaints of pain if they are inconsistent with the evidence as a whole.  Finch v. Astrue, 547 F.3d 933, 935-36 (8th Cir.2008) (ALJ may discount testimony which is inconsistent with record as whole; credibility findings are for ALJ in first instance, and when ALJ explicitly discredits claimant and gives good reasons for doing so, his judgment is entitled to deference).  Finally, lack of objective medical evidence is one factor ALJ may consider.  Forte v. Barnhart, 377 F.3d 892, 895 (8th Cir.2004).

### a. Credibility

The ALJ found that plaintiff's testimony regarding the intensity and persistence of her symptoms was not credible. The ALJ specifically listed the factors set forth in Polaski prior to her discussion of plaintiff's credibility. Polaski, 739 F.2d 1320. The ALJ then found plaintiff's complaints inconsistent with the record as a whole, including: the consistent lack of restrictions and objective symptoms in medical record; Dr. Buvat's statements that plaintiff is able to control her symptoms when she is compliant with her medication and treatment instructions; evidence that disability paperwork was completed at plaintiff's request, but plaintiff declined to submit it to the ALJ; that plaintiff's daily activities included caring for her disabled husband and three children, housework and shopping; that plaintiff often denied major problems or ill-effects from her medications; and that her work history indicated a poor work ethic even when she was not disabled. In addition, plaintiff reported that she quit her last job because of stress, not because of any physical impairment. Because the ALJ explicitly noted the Polaski factors and substantial evidence supports the finding that plaintiff's testimony not credible, the ALJ's credibility determination is entitled to deference. Hogan v. Apfel, 239 F.3d 958, 962 (8th Cir. 2001) ("If an ALJ explicitly discredits a claimant's testimony and gives good reason for doing so, we will normally defer to that judgment." ).

Plaintiff also argues that the ALJ's failed to consider the third-party statements in the reports by Adams and Falter in evaluating her credibility. Neither report was explicitly discussed in the ALJ's decision. Specifically, plaintiff claims that the statement in the Adams report that plaintiff was obese and her breathing was labored lends credibility to plaintiff's testimony regarding her level of exertional impairment.

-16-

She also argues the ALJ failed to consider the manipulative limitations recommended by Falter, a state disability counselor, as third-party statements supporting her subjective complaints.  Cf. Dewey v. Astrue, 509 F.3d 447 (8th Cir. 2007) (non-physician RFC assessment is not medical evidence).

The regulations provide that the ALJ will "carefully consider any other information you may submit about your symptoms," including statements "other persons provide about your pain or other symptoms."  20 C.F.R. § 404.1529(c)(3).  The regulation, however, does not define what is meant by "careful consideration."  Buckner v. Astrue, 646 F.3d 549 (8th Cir. 2011).  Even where an ALJ does not explicitly address third-party evidence supporting plaintiff's testimony regarding her impairments, there is no reversible error where "the same evidence that the ALJ referred to in discrediting [plaintiff's] claims also discredits the [third-party] claims," so long as the ALJ "sufficiently assess [plaintiff's] credibility."  Id. at 860.  Thus, an ALJ's decision to omit discussion of third-party evidence will not warrant reversal based on "arguable deficiency in opinion-writing technique . . . [that] had no bearing on the outcome of [plaintiff's] case."  Id. (quoting Robinson v. Sullivan, 956 F.2d 836, 841 (8th Cir. 1992)). The ALJ is not required to discuss every piece of evidence in the record.  Wildman v. Astrue, 596 F.3d 959, 966 (8th Cir. 2010).

Here, the Court finds that the failure of the ALJ to explicitly discuss the content of the Adams and Falter reports does not warrant remand.  The same analysis that the ALJ used to discredit plaintiff's testimony also addresses any statements in the Adams and Falter reports that are inconsistent with the plaintiff's RFC.  As such, the omission of any explicit reference to the Falter and Adams reports had no bearing on the outcome of plaintiff case.  See Buckner, 646 F.3d at 560.

### b.      Supporting Medical Evidence

The ALJ determined plaintiff to be able to perform a full range of light-duty work with no postural, manipulative, or non-exertional limitations.  Plaintiff argues that this RFC is not supported by medical evidence and that the ALJ failed to fully-develop the medical record prior to making his disability determination.  The Court agrees there was insufficient medical evidence to evaluate plaintiff's RFC.  Although the ALJ does not explicitly refer to the Falter report, her assessment is consistent with the RFC assessment by Falter, except with regard to plaintiff's manipulative limitations. Defendant now argues that the ALJ correctly did not consider Falter's report as a medical source in determining plaintiff's RFC.  See Dewey v. Astrue, 509 F.3d 447 (8th Cir. 2007).  In conceding that Falter's report is not medical evidence, however, there still must be some "medical evidence that addresses claimant's ability to function in the workplace."  Baldwin, 349 F.3d at 556; see also Wyrick v. Astrue, 2011 WL 2680719 (W.D. Mo. 2011) (reaching the same conclusion on similar facts).  The only medical evidence pertaining to plaintiff's physical abilities consists of Dr. Buvat's recommendation that plaintiff continue to get daily exercise and the April 2009 notation that plaintiff cannot carry more than five pounds.  To the extent that the exercise recommendation is suggestive of plaintiff's ability to engage in some physical activity, it may be considered inconsistent with plaintiff's allegations.  See Moore v. Astrue, 572 F.3d 520 (8th Cir. 2009) (treating physician's recommendation of increased physical exercise inconsistent with plaintiff's claimed functional limitations).  However, the degree to which it is inconsistent cannot be determined.  Also, the 2009 notation was based on plaintiff's report that she frequently drops things, not on any medical assessment.   The Court finds that Dr. Buvat's statements do not adequately address

plaintiff's level of "function by function" impairment.  Cf. Raney v. Barnhart, 396 F.3d 1007, 1010 (8th Cir.2005).  As such, the ALJ's determination of plaintiff's RFC is not supported by at least some medical evidence and the ALJ erred by failing to fully-develop this crucial issue.  Goff v. Barnhart, 421 F.3d 785, 791 (8th Cir.2005) (ALJ is required to obtain additional medical evidence if crucial issue is underdeveloped).

4.  **Plaintiff's Ability to Perform Past Work**

As discussed above, the ALJ's determination of plaintiff's RFC is not supported by substantial evidence. Thus, the ALJ's determination that plaintiff's RFC allowed her to her return to her past work is also not substantially supported.

### V.  Conclusion

For the reasons discussed above, the Court finds that the Commissioner's decision is not supported by substantial evidence in the record as a whole.

Accordingly,

**IT IS HEREBY ORDERED** that the decision of the Commissioner is **reversed** and this matter is **remanded** pursuant to the fourth sentence of 42 U.S.C. § 405(g) for further proceedings.

A separate Judgment in accordance with this Memorandum and Order will be entered this same date.

_____
CAROL E. JACKSON
UNITED STATES DISTRICT JUDGE

Dated this 9th day of March, 2012.